UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

UNITED STATES OF AMERICA,

vs.

JUAN ROBERTO GONZALEZ-DE LA MORA,
Defendant.

5:20-CR-109-M-1

MARCH 24, 2020
PLEA HEARING
BEFORE THE HONORABLE RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Government:

THOMAS CROSBY , ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601

On Behalf of the Defendant:

SCOTT L. WILKINSON, ESQ.
Scott L. Wilkinson & Associates, P.C.
2802 Anderson Drive, Suite 101
Raleigh, North Carolina 27608

AMY M. CONDON, CRR, RPR, CSR
Official Court Reporter
United States District Court
Raleigh, North Carolina
Stenotype with computer-aided transcription

(Friday, March 24, 2020, commencing at 11:03 a.m.)

P R O C E E D I N G S

THE COURT: Mr. Wilkinson, I read your additional submission. If the clerk will call the case.

THE CLERK: United States of America versus Juan Gonzalez-De La Mora.

THE COURT: Counsel, can you state your appearance for the record.

MR. CROSBY: Good morning, Your Honor. Tom Crosby for the Government.

MR. WILKINSON: Good morning. Scott Wilkinson for Mr. Gonzalez.

THE COURT: Mr. Wilkinson, does the defendant wish to enter a plea today?

MR. WILKINSON: He does, Your Honor.

THE COURT: My understanding is there's a written plea agreement which I have been given a copy of.

MR. WILKINSON: There is, Your Honor. And, also, I have the signed waiver of indictment. If I can approach the bench.

THE COURT: Please do.

Mr. Gonzalez-De La Mora, please stand.

Please administer the oath.

(The defendant, Juan Roberto Gonzalez-De La Mora, was sworn.)

THE COURT: Mr. Gonzalez-De La Mora, do you understand that you are now under oath; and that if you do not answer my questions truthfully, the Government may use your answers against you in another prosecution for perjury or for making false statements?

THE DEFENDANT: Yes, sir.

THE COURT: Before accepting your plea of either guilty or not guilty, there are a number of questions that I must ask you and a number of things that I must tell you.

It is important that you fully understand my questions and statements. If you do not understand me, please say so. And you may confer with your lawyer before answering any of my questions.

How old are you?

THE DEFENDANT: Forty-two.

THE COURT: How far did you go in school?

THE DEFENDANT: Eleventh grade, and some college afterward.

THE COURT: Can you speak and understand English?

THE DEFENDANT: Yes, sir.

THE COURT: Can you read and write in English?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any illness or condition that affects your ability to hear and understand these proceedings today?

THE DEFENDANT: No, sir.

THE COURT: Have you taken any drugs, medicine, pills, or drunk any alcohol within the last 24 hours?

THE DEFENDANT: No, sir.

THE COURT: Mr. Wilkinson, do you have any doubt as to the defendant's competence to plead at this time?

MR. WILKINSON: I do not, Your Honor.

THE COURT: Mr. Crosby, do you have any doubt as to the defendant's competence to plead at this time?

MR. CROSBY: I do not.

THE COURT: Based on this Court's questions, the defendant's answers, and counsels' answers, this Court finds that the defendant is competent to enter a plea today.

Have you received a copy of the information; that is, the written charges against you in this case?

THE DEFENDANT: Yes.

THE COURT: Have you had adequate opportunity to discuss the information and your case with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Have you, in fact, done so?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with your lawyer's legal services in your case?

THE DEFENDANT: Yes.

THE COURT: You're pleading to an information. If

you're accused of a felony, you have the constitutional right to have a grand jury consider the accusation and decide whether to indict you. Unless you waive indictment, you may not be charged with a felony.

To be indicted by a grand jury, the grand jury must find there is probable cause to believe that a crime was committed and that you committed it. A grand jury consists of 16 to 23 persons and at least 23 grand jurors -- I'm sorry. The majority of the grand jurors must find there is probable cause to believe that you committed the charged crime before you may be indicted.

You may waive your right to grand jury indictment and consent to being charged by information of the United States Attorney.

If you do not waive grand jury indictment, the U.S. Attorney may present the case to the grand jury and ask the grand jury to indict you. The grand jury may or may not do so.

If you waive prosecution by grand jury indictment, the case will proceed against you based on the U.S. Attorney's information.

Do you understand your right to have a grand jury consider your case and your right to prosecution by grand jury indictment?

THE DEFENDANT: Yes.

THE COURT: The Court advises you that you have the right to plead not guilty, or having already so pleaded, to persist in that plea. Do you understand you have a right to plead not guilty?

THE DEFENDANT: Yes, yes.

THE COURT: And if you've already done so, you can continue that plea; do you understand that?

THE DEFENDANT: Yeah.

THE COURT: You have the right to a jury trial; do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: At a trial, you have the right to be represented by counsel and if necessary have the Court appoint counsel to represent you at trial and at every other stage of the proceedings. Whether you plead guilty or not guilty does not affect your right to counsel. Do you understand?

THE DEFENDANT: Yes.

THE COURT: You have the right to confront and cross-examine witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses. Do you understand?

THE DEFENDANT: Yes.

THE COURT: The Court advises you that you waive or give up all of these trial-related rights if you plead guilty and the Court accepts your guilty plea. Do you understand?

THE DEFENDANT: Yes.

THE COURT: As for charges, the Court advises you as follows. It's a two-count information: Count 1, beginning no later than February 2019 and continuing up to and including May 8, 2019, in the Eastern District of North Carolina and elsewhere, Juan Gonzalez-De La Mora, the defendant herein, did knowingly and intentionally combine, conspire, confederate, agree and have a tacit understanding with each other and other persons, known and unknown, to knowingly and intentionally distribute and possess with the intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Code, Section 841(a)(1), all in violation of Title 21 United States Code, Section 846.

Count 2 reads that on or about May 8, 2019, in the Eastern District of North Carolina, Juan Roberto Gonzalez-De La Mora, the defendant herein, aiding and abetting others, did knowingly and intentionally possess with the intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Code, Section 841(a)(1) and Title 18 United States Code, Section 2.

There's also a forfeiture notice that lists forfeitable property, specifically $5,140 in U.S. currency and 4,450 pesos in Mexican currency, as well as any proceeds or

property used to conduct the offense. Do you understand the charges?

THE DEFENDANT: Yes.

THE COURT: The Court advises you as to the maximum possible penalty including imprisonment, fine, or supervised release as to each charge. Count 1, conspiracy and possession with the intent to distribute 500 grams or more of methamphetamine. Under Title 21 United States Code, Section 841(b)(1)(A), there's a penalty of not less than 10 years and up to life imprisonment, a fine of up to $10 million, or both such fine and imprisonment, and not less than five years or up to life on supervised release. Under Title 18 United States Code, Section 3583(e)(3), there's five years of imprisonment upon revocation of supervised release. There's a 100-dollar special assessment under Title 18 United States Code, Section 3013(a)(2)(A), and restitution where applicable.

Under Count 2, under possession with the intent to distribute 500 grams or more of methamphetamine, under 21 United States, Section 841(b)(1)(A), calls for a penalty of not less than 10 years and up to life imprisonment, a fine up to $10 million, or both such fine and imprisonment, and not less than five years or up to life of supervised release. Title 18 United States Code, Section 3583(e)(3) provides for five years of imprisonment upon revocation of supervised release.

Title 18 United States Code, Section 3013(a)(2)(A) provides for a 100-dollar special assessment, and restitution is also available where applicable.

Do you understand these mandatory minimums and maximums?

THE DEFENDANT: Yes, sir.

THE COURT: The Court also advises you that if you're convicted in federal court of a crime, whether by a guilty plea or a trial, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Do you understand?

THE DEFENDANT: Yes.

THE COURT: As for sentencing, sentencing will take place at the June 30th, 2020, term of court.

The Court advises you that in determining your sentence, the Court must calculate the applicable advisory sentencing guideline range and consider that range.

In addition, the Court must consider possible departures under the United States Sentencing Guidelines and consider other sentencing factors under Title 18 United States Code, Section 3553(a).

Of course, the Court will also consider your lawyer's arguments, any statement you wish to make, any victim allocution, if appropriate, and the arguments of the Assistant

United States Attorney.

In addition, the Court advises you as follows concerning your plea agreement: Your plea agreement was negotiated between you, your counsel, and counsel for the Government. Your plea agreement is between you and the Government. The Court is not a party to the plea agreement. Also, the Court is not bound by any sentencing recommendations or stipulations in the plea agreement.

I also advise you that the Court is obligated to examine carefully any plea agreement to be sure that the agreement conforms with the objectives of sentencing, including imposing a sentence within the parameters of your statute of conviction, your offense level, and past criminal conduct, if any.

The Court will not be able to evaluate your offense level and your past criminal conduct until after it receives a detailed presentence report from the probation office. The probation officer will prepare that report between now and your sentencing date.

I have a memorandum of plea agreement. The Court is observing the courtroom and noticing there are no personnel in the courtroom who are not either participants in this particular proceedings or employees of probation or court security, so I'm also noting that there's a sealed supplement to the plea agreement, which will be maintained under seal.

Is this, in fact, a plea agreement that is signed by -- let's see -- Mr. Crosby, Mr. Wilkinson, and Mr. Gonzalez-De La Mora. Is this your signature here, sir?

THE DEFENDANT: Yes.

THE COURT: And there's also the supplement, again, signed by Mr. Crosby, Mr. Wilkinson, and yourself. Is that also your signature?

THE DEFENDANT: Yes.

THE COURT: Did you read and discuss the entire plea agreement with your lawyer before you signed it?

THE DEFENDANT: Yes.

THE COURT: Does this written plea agreement constitute in its entirety the whole agreement you have with the Government about your case, including the supplement?

THE DEFENDANT: Yes.

THE COURT: Do you understand each term of the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: I need to specifically discuss with you the appellate rights waiver in the agreement.

On page 1, paragraph 2(c), you agree to waive knowingly and expressly all rights conferred by Title 18 United States Code, Section 3742, to appeal the conviction in whatever sentence is imposed on any ground, including any issues that relate to the establishment of the advisory

guideline range, preserving only the right to appeal from a sentence in excess of the applicable advisory guideline range that is established at sentencing; and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 United States Code, Section 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant at the time of the defendant's guilty plea.

The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

These are important rights that you're giving up. Do you understand them?

THE DEFENDANT: Yes.

THE COURT: In Section 5 of the plea agreement, the parties agree to a two-level or three-level departure based on your acceptance of responsibility.

Is there any other agreement on sentencing factors in this case, Counsel?

MR. CROSBY: No, Your Honor.

MR. WILKINSON: No, Your Honor.

THE COURT: Do you understand that this agreement is not binding on the Court at sentencing; that is, it's an agreement between you and the Government. This does not bind

the Court. The Court has to make an independent determination. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promise to you or anyone else that caused you to decide to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone attempted in any way to force you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you or anyone else and thereby caused you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that the charges to which you intend to plead guilty are felonies; and that if your guilty plea is accepted, you'll be found guilty of those charges?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that such a guilty plea may deprive you of certain valuable civil rights, such as the right to vote, the right to serve on a jury, the right to hold public office, and the right to possess any kind of firearm?

THE DEFENDANT: Yes.

THE COURT: I will now inform you about certain information concerning sentencing.

Although, the United States Sentencing Guidelines are no longer mandatory due to a case called United States v. Booker, the Court must still consider those guidelines as well as all relevant statutory factors in determining your sentence.

The Court will not determine an advisory guideline range until after a presentence report has been completed and a sentencing hearing has been held.

The presentence report will be prepared at some point between this hearing today and your sentencing hearing. Your sentencing hearing will not take place until approximately 90 days from now.

Do you understand this?

THE DEFENDANT: Yes.

THE COURT: Do you understand your lawyer's calculation of an advisory guideline range is only an estimate, and that the Court will determine the advisory guideline range at the sentencing hearing?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the Court has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the advisory guideline range?

THE DEFENDANT: Yes.

THE COURT: If I were to do so, that would be done

via what's called a departure or variance.

Do you understand that it is the Court that will determine your actual sentence?

THE DEFENDANT: Yes.

THE COURT: Do you understand that your sentence may be different from any estimate your lawyer or anyone else may have given you?

THE DEFENDANT: Yes.

THE COURT: You understand that if you enter a plea of guilty and the Court accepts that plea, then the Court has the authority to sentence you to the maximum sentence on each count permitted by law?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the maximum sentence on each count permitted by law is the maximum penalty that I just told you about a little while ago as to each count?

THE DEFENDANT: Yes.

THE COURT: Do you understand if the Court imposed such a maximum sentence, you would not be allowed to withdraw your guilty plea?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promise to you as to what your sentence will be?

THE DEFENDANT: No, sir.

THE COURT: Please listen carefully to the following additional consequences that arise if you plead guilty and the Court accepts your guilty plea.

If you plead guilty, you'll have to waive your right not to incriminate yourself because the Court will ask you questions about what you did in order to ensure that you are guilty as charged and you'll have to acknowledge your guilt. If you plead guilty, the Court may impose the same punishment as if you had pleaded not guilty and been convicted by a jury.

If you are on probation, parole, or supervised release in another case, in this or another court, by pleading guilty here, your probation or parole may be revoked and you may be required to serve time in that case in addition to any sentence imposed upon you as a result of your guilty plea here.

Unless otherwise advised at sentencing, any fine imposed will bear interest. You will most likely be given a term of supervised release in addition to a term of imprisonment. A term of supervised release will follow imprisonment, will last at least five years, and may last for the remainder of your life and will be conditioned on your non-commission of another federal, state, or local crime and such other conditions as may be appropriate.

If you violate the conditions of supervised release, you may be subject to further imprisonment.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Additionally, regardless of the advisory sentencing guidelines ultimately found to be appropriate, you may not withdraw a guilty plea tendered and conditionally accepted today.

Do you understand all the rights that I've explained to you?

THE DEFENDANT: Yes.

THE COURT: Do you understand all the possible consequences of pleading guilty?

THE DEFENDANT: Yes.

THE COURT: Do you understand that right now at this very moment you still have the right to plead not guilty to every offense brought against you?

THE DEFENDANT: Yes.

THE COURT: You understand that if you plead not guilty, you'll enjoy all of the trial-related rights and appeal rights that I've described to you?

THE DEFENDANT: Yes.

THE COURT: Do you also understand if you enter a plea of guilty and I accept it, there will not be a trial. Instead, you would have waived or given up your right to a trial as well as all of the trial-related rights that I've just described to you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, my understanding is that you executed a written waiver of your right to a grand jury.

And that's the document I have in front of me right now; is that correct, Mr. Wilkinson?

MR. WILKINSON: Yes, Your Honor.

THE COURT: The Court finds this to be properly in order, and I have signed the waiver.

Have you answered all of my questions truthfully today?

THE DEFENDANT: Yes.

THE COURT: I'm now going to read the charges and ask you how you plead.

Again, this is a two-count criminal information. Count 1, beginning no later than February 2019 and continuing up to and including May 8, 2019, in the Eastern District of North Carolina and elsewhere, Juan Roberto Gonzalez-De La Mora, defendant herein, did knowingly and intentionally combine, conspire, confederate, agree, and have a tacit understanding with each other and other persons, known and unknown, to knowingly and intentionally distribute and possess with the intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Code, Section 841(a)(1), all in violation of Title 21 United States Code, Section 846.

How do you now plead to Count 1?

THE DEFENDANT: Guilty.

THE COURT: Did you do what is charged in Count 1?

THE DEFENDANT: Yes, sir.

THE COURT: Then you are, in fact, guilty as charged in Count 1?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Count 2, on or about May 8th, 2019, in the Eastern District of North Carolina, Juan Roberto Gonzalez-De La Mora, defendant herein, aiding and abetting others, did knowingly and intentionally possess with the intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Code, Section 841(a)(1), and Title 18 United States Code, Section 2.

How do you now plead to Count 2?

THE DEFENDANT: Guilty.

THE COURT: Did you do what is charged in Count 2?

THE DEFENDANT: Yes.

THE COURT: And you are, in fact, guilty as charged in Count 2?

THE DEFENDANT: Yes.

THE COURT: You may have a seat.

Mr. Crosby, please make a proffer or put on evidence concerning the facts the Government would be prepared to prove

at trial so that the Court may determine whether there's an independent factual basis for the plea.

MR. CROSBY: Thank you, Your Honor.

Had this matter gone to trial, the evidence presented would have intended to show that the Drug Enforcement Administration and Wake County Sheriff's Office utilized an undercover officer to essentially set himself up as a whole distributor in the Raleigh area and to essentially lure the next level of wholesale distributers of various forms of controlled substances.

This particular occasion, Judge, our undercover officer got information that Mr. De La Mora, at least his phone number, might be associated with the bulk sale and distribution of methamphetamine. They made contact in the spring of 2019 by phone, and in a series of reported phone calls had conversations where he learned that De La Mora, Mr. Gonzalez-De La Mora, had both quantities of methamphetamine available for sale.

Ultimately, they set up a meeting by phone and then in person on May 8th, 2019, in -- at a parking lot of the International Food in Raleigh, North Carolina. They met. They agreed to have Mr. De La Mora deliver a quantity of methamphetamine to our undercover officer.

Later that day the delivery was planned utilizing De La Mora's courier; that's Delores Carrillo, C-A-R-R-I-L-L-O.

Ms. Carrillo was essentially his courier. She was the transport person for the narcotics.

Wake County Sheriff's Office Interdiction Squad ended up doing a traffic stop on her vehicle as it went into Wake County on the Interstate 40 corridor near Airport Boulevard. The explained traffic stop, the reason for the traffic stop was a vehicle equipment violation.

During the course of the interdiction stop, Judge, the officers started seeing sort of classic signs that to them were consistent with their training and experience with drug activity, including extreme nervousness on the part of Ms. Carrillo. The officers obtained consent to search the vehicle. And in addition to the consent to search the vehicle, they also had a K9 circle the vehicle and alerted on Ms. Carrillo's vehicle. That K9 did ultimately alert on the vehicle.

She was in the car with her mother and three children. The vehicle and their occupants were transported to a maintenance shop that was held or maintained by Wake County Sheriff's Office.

Investigators at that maintenance shop were able to find an aftermarket hidden compartment behind the rear seat. They had to utilize a compressed air system to try and get access to that hidden compartment. When they did, they ultimately recovered eight kilograms of methamphetamine from

that location.

Both De La Mora and Carrillo were arrested. De La Mora was taken into custody and detained right around the same time as the traffic stop occurred at a separate location, Judge.

A field test for the methamphetamine was conducted with positive results. The suspected narcotics were submitted to the City County Bureau of Investigation -- Identification, I'm sorry. And of those suspected methamphetamine, there were confirmed to contain methamphetamine.

That would have been some of the evidence, Judge, had this matter gone to trial.

THE COURT: Mr. De La Mora, do you contest any of the facts that were just presented?

MR. WILKINSON: Your Honor, it doesn't go to the essence of the charges against Mr. Gonzalez-De La Mora, but I think the only disagreement he would have is characterizing Delores Carrillo as Mr. Gonzalez's courier; but other than that, he doesn't have any objection.

THE COURT: Just the characterization of the relationship between --

MR. WILKINSON: Correct, Your Honor.

THE COURT: -- Ms. Carrillo and Mr. Gonzalez-De La Mora?

MR. WILKINSON: Correct. Again, it's not essential

to his guilty plea or the elements of it.

THE COURT: So you do acknowledge your relationship to the methamphetamine that was seized in this case?

THE DEFENDANT: Yes.

THE COURT: All right. In light of the plea of guilty and the Government's proffer, the Court finds that the plea is supported by an independent basis in fact as to each essential element of the offenses.

The Court also finds that the defendant is fully competent and capable of entering an informed plea; that the defendant is aware of the nature of the charges, the maximum penalties, and the mandatory minimum sentence, if any; his rights and the consequences of pleading guilty.

The Court also finds that the defendant's plea of guilty is knowing and voluntary. The plea is, therefore, accepted and the defendant is now adjudged guilty of the charges in Counts 1 and 2.

This matter is set for sentencing during the June 30th, 2020, term of court here in Wilmington. As mentioned, the probation office will prepare a written presentence report to assist the Court in sentencing.

You'll be asked to give information for the presentence report, and your lawyer may be present with you. At the end of this hearing, your lawyer will speak to the probation officer present in this courtroom about arranging

for your interview sometime today, and certainly within three business days.

After your interview, the probation office will prepare a presentence report. You and your lawyer will receive a copy of the presentence report. Please read it carefully.

You have the right to file objections to the presentence report. In fact, within 15 days of receiving the presentence report, you and your lawyer must communicate in writing to the probation office objections to any information contained in or omitted from the report.

The Court will not consider any dispute which has not been the subject of such written communication.

Further, the Court will consider and resolve only issues relevant to the disputed sentencing factors previously stated in writing and additionally brought to its attention by you or your lawyer at the time of sentencing.

At sentencing, you should advise the Court orally if you have any objection to any matter contained in or omitted from the presentence report. Contentions not stated by you or your lawyer will be deemed abandoned.

Your failure to challenge any prior convictions before the imposition of your sentence will bar your contesting those convictions at a later date.

In sum, if you do not contest the facts set forth in

the presentence report, then the Court may accept those facts as correct and may rely on them in determining your sentence.

Between now and the sentencing hearing, you will, of course, continue to have access to consult with your lawyer to prepare for sentencing.

If you or your lawyer would like the Court to consider any sentencing memorandum concerning your case, it must be filed not later than seven days before your sentencing hearing. The same deadline applies to other written materials submitted on your behalf, such as character letters.

At the sentencing hearing, the Court will rule on any objections by you or the Government to the presentence report. The Court will then determine an advisory guideline range and consider any motions.

The Court will then hear from your lawyer, from you, and from the lawyer for the Government. After that, the Court will consider the advisory guideline range and all relevant sentencing factors under federal law and announce your sentence in open court.

My understanding is this is a mandatory detention case under 3143.

MR. CROSBY: Yes, Judge.

THE COURT: Anything I need to be informed about on detention?

MR. WILKINSON: There are, Your Honor.

Your Honor, probation has filed a pretrial services report that has recommended conditions of release for the Court to consider. We would also ask the Court to consider conditions of release.

As the pretrial services report reflects, the proposed third-party custodian would be Mr. Gonzalez-De La Mora's wife, her name is Gladys Gonzalez. They live in California. Mr. Gonzalez lived in California before he was arrested May 8th, 2019. Mrs. Gonzalez and their two children still reside in California.

This case has a number of moving parts to it. He was, as the Court heard, originally arrested May 8th, 2019, on the State charges. He's been in State custody since May 2019 up until the last couple of weeks on a bond. I don't know what it is, but it's an amount that he hasn't been able to make since May 2019.

Your Honor, once the pretrial services report came out, at least recommended conditions that might be acceptable to the Court, it took some time to get to Mr. Gonzalez about whether he wanted to try to deal with that issue. He's been separated from his wife and children for a period of time, so the issue of reliving that issue is something that I needed to discuss with him.

I also contacted the Government to find out their position regarding his pretrial release status, and they

indicated they were going to continue to move for detention.

All that is to say, Your Honor, I don't have Mrs. Gonzalez here. I could get her here by the end of the week. Just with the coronavirus and her two small children traveling from California made the logistics and all of that kind of difficult.

I also need, Your Honor, to deal with the State Court bond. Again, he was arrested on State charges. It was a task force, included both state and federal agencies. I don't think anyone had any expectation other than he would end up here. So he needed to enter a plea today, and then I can use that circumstance to talk with the State DA. Maybe the Federal Government could assist with removing that bond because they don't intend to prosecute him anymore.

So what I ask the Court is until later this week or the first of next week the opportunity to talk with the State Court about that bond and also to get Mrs. Gonzalez here.

As Mr. Gonzalez told you, he's 42 years old. He does not have any criminal history. The courtroom is as it was before when the Court made some observations, he does intend to cooperate with the Government. He would otherwise be subject to the safety valve as a possibility.

So he has a lot of things that he's trying to work on; debriefs and that type of thing. But given the circumstances where we are and the circumstances of his case,

I'd ask the Court to give us a couple more days to get Ms. Gonzalez here and then have a hearing regarding his pretrial detention.

THE COURT: Thank you, Mr. Wilkinson.

Mr. Crosby, does the Government intend to move?

MR. CROSBY: The Government is still moving for detention, Judge, but I don't have an objection to a motion to continue.

THE COURT: I'm happy to continue -- actually, why don't you move for a detention hearing at the appropriate time. If the Government continues to move for detention, I'm bound by statute. I can't do anything about it. So if you can get to the point where there's a joint motion between your client and the Government that the Government intends to move for his release, I'll consider it at the appropriate time.

You've ably represented his position and you've ably represented him; but in the absence of the Government's motion, detention is mandatory under the statute.

So I think the appropriate thing to do is to wait until such a motion is made and then we can have a new detention hearing, but I'm going to order him detained today in the absence of a motion. This is where we are. And until and unless the Government moves, he's pled guilty so there's not a likelihood under Prong 1 that he will be found not guilty and there's no Government motion, so detention is

mandatory under the statute.

MR. WILKINSON: Thank you, Your Honor.

MR. CROSBY: Thank you, Your Honor.

THE COURT: Mr. Marshal, the defendant is in your custody.

* * *

(The proceedings concluded at 11:38 a.m.)

UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

CERTIFICATE OF OFFICIAL REPORTER

I, Amy M. Condon, CRR, RPR, CSR, Federal Official Court Reporter, in and for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 18th day of February, 2022.

__________________________
/s/ Amy M. Condon
Amy M. Condon, CRR, CSR, RPR
U.S. Official Court Reporter