12943842.1.2-21
RECEIVED
DEC 03 2025 MM
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA

**UNITED STATES OF AMERICA,**
Plaintiff,

Case No. 5:20-cr-00109-M-1
Case No. 5:21-cv-00505-M

v.

**JUAN ROBERTO GONZÁLEZ DE LA MORA,**
Defendant.

---

## REPLY IN OPPOSITION TO UNITED STATES' MOTION TO DISMISS RULE 60(b)(2) MOTION TO REOPEN FINAL JUDGMENT (D.E. 115) AND SUPPORTING MEMORANDUM (D.E. 116)

---

COMES NOW Defendant–Movant **Juan Roberto Gonzãlez De La Mora**, pro se, and respectfully files this Reply in Opposition to the United States' Motion to Dismiss (D.E. 115) and its Memorandum in Support (D.E. 116), which seek to dismiss his pending **Motion to Reopen Final Judgment under Rule 60(b)(2) (D.E. 109).**

All references to "Exhibits A–H" in this Response are to the exhibits already filed with Movant's Rule 60(b)(2) motion at **D.E. 109-1 through 109-11**. Movant does **not** re-attach those exhibits here.

## I. BACKGROUND

Mr. Gonzalez's federal prosecution was initiated following his **arrest on May 8, 2019.** For nearly ten months, the Government failed to secure an indictment.

On **February 28, 2020,** with still <u>no indictment returned</u>, the United States filed a two-count criminal information charging Mr. Gonzalez with conspiracy and possession with intent to distribute 500 grams or more of methamphetamine. [D.E. 1]. That same day, Mr. Gonzalez, defense counsel, and the AUSA signed a written plea



Case 5:20-cr-00109-M Document 118 Filed 12/03/25 Page 1 of 21

agreement. [D.E. 12; see also Exhibit H filed with D.E. 109, showing all signatures dated **February 28, 2020**].

1. On **March 24, 2020**, Mr. Gonzalez was brought from **state custody** to federal court pursuant to a **Writ of Habeas Corpus Ad Prosequendum** (D.E. 7) for arraignment and plea. [D.E. 6–7]. He signed a **Waiver of Indictment** dated March 24, 2020, which was then filed. [D.E. 11; see also Exhibit B to D.E. 109].

2. On **December 2, 2020**, the Court imposed a 210-month sentence. [D.E. 40, 42]. The judgment was entered December 4, 2020. [D.E. 42]. Mr. Gonzalez did not file a direct appeal.

3. On **December 9, 2021**, Mr. Gonzalez filed a timely **§ 2255 motion** alleging ineffective assistance of counsel and challenging the voluntariness of his plea. [D.E. 49]. He later requested time to file a supporting memorandum, which the Court granted. [D.E. 53, 58].

4. On **March 17, 2022**, Mr. Gonzalez filed a **motion to compel** prior counsel, Scott Wilkinson, to provide his plea agreement and related records. [D.E. 62]. The Court denied that motion **without prejudice**, holding that Rule 6 of the § 2255 Rules and Rule 26 did not authorize compelling former counsel to provide records. [D.E. 63].

   In other words, Mr. Gonzalez *tried* to obtain the plea agreement during his original § 2255 case and was blocked by the combination of counsel's control of the file and the Court's discovery ruling.

5. On **May 16, 2022**, Mr. Gonzalez filed his **supporting memorandum** [D.E. 66], elaborating his ineffective-assistance and plea-validity arguments, including:

- waiver-of-indictment defects;
- lack of advice about drug purity and enhancements;
- misrepresentations by counsel regarding a promised §5K1.1 motion and safety-valve eligibility;
- and failures to challenge the Rule 11 colloquy and guideline calculations.

6. The Government moved to dismiss. [D.E. 67–68]. On **June 15, 2023**, the Court granted the motion, holding that the **"new" claims in the May 2022 memorandum were untimely** and did not relate back to the original § 2255 filing. [D.E. 79 at 10–12].

   Thus, several of Mr. Gonzalez's key claims—lack of indictment/waiver, misadvice, undisclosed enhancements—were **never reached on the merits** because they were deemed out of time.

7. Mr. Gonzalez appealed, and the Fourth Circuit denied relief on March 31, 2025. [D.E. 104–08].

8. On **April 9, 2025**, Mr. Gonzalez finally obtained a **scanned copy of his executed plea agreement** showing: (a) the signatures of Mr. Gonzalez, counsel, and the AUSA dated **February 28, 2020**, and (b) the judge's signature dated **March 24, 2020.** This document is **Exhibit H** to his Rule 60(b)(2) motion. The docket report itself (also attached as part of Exhibit H) confirms that this document was not part of the original § 2255 record.

9. On **June 26, 2025**, within roughly **two and a half months of obtaining Exhibit H to D.E. 109 (Executed Plea Agreement signed February 28, 2020).**, Mr. Gonzalez filed his **Rule 60(b)(2) motion** to reopen the § 2255 judgment on the

basis of this newly discovered evidence. [D.E. 109].

10. On **November 14, 2025**, the Government filed its **Motion to Dismiss** and **Memorandum in Support**, arguing: (1) lack of jurisdiction because the Rule 60(b)(2) motion is "second or successive," (2) untimeliness under Rule 60(c)(1), and (3) no meritorious grounds or exceptional circumstances. [D.E. 115–16].

Mr. Gonzalez now opposes dismissal.

## II. THE RULE 60(b)(2) MOTION IS NOT A "SECOND OR SUCCESSIVE" § 2255 PETITION

The Government's primary argument is that the Rule 60(b)(2) motion is really an unauthorized second or successive § 2255 motion, so the Court "lacks jurisdiction." [D.E. 116 at 1–3]. That misreads both **Gonzalez v. Crosby** and the nature of what Mr. Gonzalez is actually asking this Court to do.

### A. Gonzalez v. Crosby Allows a True Rule 60(b) Motion That Attacks a Defect in the Prior § 2255 Proceeding

In **Gonzalez v. Crosby**, the Supreme Court drew a clear distinction:

- A Rule 60(b) motion is treated as "second or successive" only if it **adds a new ground for relief** or **attacks the federal court's prior resolution of a claim on the merits**;

- A Rule 60(b) motion is a **"true Rule 60(b)"** motion where it attacks a **defect in the integrity of the federal habeas proceeding itself**—for example, a misapplied statute of limitations, denial of the opportunity to fully develop the record, or other procedural defect that prevented full consideration of existing claims.

That framework has been adopted in this Circuit. The Government itself acknowledges that if a motion is a "true Rule 60(b) motion," **no pre-filing authorization is required** and the Court has jurisdiction to adjudicate it. [D.E. 116 at 3–4].

## B. Mr. Gonzalez Is Not Adding New Claims—He Is Seeking to Reopen a Judgment Entered on an Incomplete Record and on Procedural Grounds

Mr. Gonzalez's Rule 60(b)(2) motion does **not** add any new ground for relief that was not already raised, in substance, in his § 2255 proceedings:

- **Lack of indictment / defective waiver of indictment;**
- **Involuntary plea based on counsel's misadvice and false assurances;**
- **Undisclosed and unadmitted sentencing enhancements (+4 purity, +2 role) and related Apprendi-type errors.**

These same themes were squarely raised in his § 2255 filings, particularly in his May 16, 2022 memorandum. [D.E. 66]. The Court, however, **refused to reach those "new" claims on the merits**, holding that they were **untimely amendments** and did not relate back under § 2255(f) and Rule 15. [D.E. 79 at 10–12].

This scenario is precisely what the Fourth Circuit has recognized as a proper basis for Rule 60(b) relief. In *Werner v. Carbo*, No. 22-6062, 2022 WL 1747858, at *1 (4th Cir. May 31, 2022), the court held that a Rule 60(b) motion is not successive when it "challenges the district court's previous ruling on the ground that it was based on an incomplete record." *Id.* (citing *Gonzalez v. Crosby*, 545 U.S. at 532 n.4). Here, the absence of Exhibit H created the "incomplete record" that led to the procedural dismissal of Movant's core claims.

The Rule 60(b)(2) motion does not seek a second bite at the apple on new grounds. It seeks to **reopen the § 2255 judgment** because:

1. The **critical document** that proves the jurisdictional defect and the plea-timing problem—**Exhibit H, the executed plea agreement showing the February 28, 2020 signatures**—was **not available** during the § 2255 proceedings despite Mr. Gonzalez's due-diligence efforts; and

2. As a result, the Court's earlier ruling rested on an **incomplete factual record** and a **procedural bar (timeliness)** that prevented full adjudication of those claims.

This evidentiary incompleteness infected the entire proceeding, including the initial plea hearing. The March 24, 2020 transcript reveals that the sentencing judge himself was unaware of the plea's execution nearly a month prior. The Court referred to the plea agreement as something it had "been given a copy of" [D.E. 59 at 3:16-17] and confirmed the signatures were present [D.E. 59 at 16:21-25], but the critical timing—that the parties had bound themselves on February 28—was never disclosed or made part of the record that the §2255 court later reviewed. Thus, both the plea court and the §2255 court decided matters based on a record that concealed the fundamental jurisdictional timeline.

The Rule 60(b)(2) motion therefore **does not attack the prior merits resolution** of his claims—it attacks the **procedural handling and evidentiary incompleteness** of the § 2255 proceeding, using truly **newly discovered evidence** that was beyond his control.

The Government's Motion to Dismiss rests on a fundamental mischaracterization of the relief sought. Movant does not present new claims for habeas relief. Instead, he presents newly discovered, uncontested evidence—the fully executed plea agreement (Exhibit H)—that proves the § 2255 proceeding which dismissed his claims on procedural timeliness grounds was fundamentally flawed and decided on an incomplete record. This is the epitome of a "true" Rule 60(b) motion attacking the integrity of the prior habeas proceeding itself.

### C. The Remedy Sought Confirms This Is a True Rule 60(b) Motion

The Government points to the fact that Mr. Gonzalez ultimately seeks to vacate his plea and sentence and argues that makes it successive. But that argument proves too much: **every successful Rule 60(b) motion necessarily undermines and seeks to disturb a prior judgment**. If the mere downstream impact were enough to label a motion "successive," Rule 60(b) would be a dead letter in habeas cases.

Here, Mr. Gonzalez explicitly asks the Court to:

1. **Reopen the § 2255 judgment**;
2. Address the jurisdictional and constitutional issues raised in light of Exhibit H and the existing record; and
3. At minimum, grant an **evidentiary hearing**.

That is classic Rule 60(b) relief, not an unauthorized new § 2255.

## III. TIMELINESS: THE COURT CAN AND SHOULD REACH THE RULE 60(b) MOTION

The Government's alternative argument is that, even if this is a "true Rule 60(b)" motion, it is **untimely** because more than one year elapsed between the § 2255 judgment (May 15, 2023) and the filing of the Rule 60(b)(2) motion (June 26, 2025). [D.E. 116 at 7–8].

That argument ignores both **due diligence** and the Court's authority under **Rule 60(b)(4) and 60(b)(6)** when the judgment is void or extraordinary circumstances are present.

## A. The Motion is Timely Because the § 2255 Judgment Was Not Final Until 2025

As a threshold matter, the Government's timeliness calculation is fundamentally flawed. The one-year period under Rule 60(c)(1) runs from "the date of the entry of the judgment." For a § 2255 proceeding, the judgment is not final—and the clock does not begin to run—until the appellate process concludes and the mandate issues. *See, e.g., *Rogers v. United States, 2017 WL 106776, at 2 (W.D.N.C. Jan. 11, 2017)* (collecting cases and holding that "the one-year period prescribed by Rule 60(c) did not begin to run... until the Fourth Circuit issued its mandate").

Here, the Court entered its final judgment dismissing the § 2255 motion on **June 15, 2023**. [D.E. 79]. Mr. Gonzalez timely appealed. [D.E. 81]. The Fourth Circuit denied a certificate of appealability and dismissed the appeal on **March 31, 2025**. [D.E. 107]. The mandate issued on **April 21, 2025**. [D.E. 108]. Therefore, the one-year period for filing a Rule 60(b) motion did not even begin to run until April 21, 2025.

Mr. Gonzalez filed the instant Rule 60(b)(2) motion on **June 26, 2025** [D.E. 109]—a mere *two months* after the mandate issued and the judgment became final. This filing falls well within the one-year deadline prescribed by Rule 60(c)(1). This independent ground renders the motion timely, irrespective of the "newly discovered evidence" argument that follows.

## B. Due Diligence: Mr. Gonzalez Could Not Obtain Exhibit H , Earlier

Rule 60(b)(2) requires that the evidence be "newly discovered" and that it could not have been discovered with reasonable diligence in time to move for relief earlier.

Here, the record shows:

- Mr. Gonzalez was incarcerated and **did not have possession of his plea agreement**; **counsel did.**

- Mr. Gonzalez was a pro se inmate, to whom English was his second language, housed in federal custody without access to his case file. Former counsel retained exclusive control of the plea documents. Mr. Gonzalez attempted to secure the plea agreement during the § 2255 proceeding through a motion to compel, but the Court denied compulsory disclosure. [D.E. 62–63]. Thus, the absence of Exhibit H from the § 2255 record was not caused by neglect, but by an evidentiary barrier beyond Movant's control — the exact scenario Rule 60(b)(2) is designed to remedy.

- He moved to compel production of his plea agreement and related records in March 2022. [D.E. 62]. The Court denied that motion without prejudice, citing limits on its authority to compel former counsel. [D.E. 63].

- He continued to litigate his § 2255 claims without ever having his own plea document in the record.

- He finally obtained a scanned copy of the fully executed plea agreement on April 9, 2025, as reflected in the PACER docket excerpt included in Exhibit H.

- Within approximately two and a half months of obtaining that evidence, he filed the Rule 60(b)(2) motion (June 26, 2025). [D.E. 109].

- Under these circumstances, Mr. Gonzalez did all that an incarcerated, pro se litigant could reasonably do. The delay was caused by counsel's retention of the file and the Court's earlier refusal to compel production, not by any lack of diligence on his part.

The Government's timeliness argument, under these facts, would impose an impossible burden: to produce a document the Court itself had denied him the power to compel. Such a result is not only illogical but fundamentally unfair. Movant's diligence was more than reasonable; it was exhaustive given the constraints of his incarceration and pro se status.

## C. The Jurisdictional Nature of the Defect and Rule 60(b)(4)/(b)(6)

The Government argues that the one-year limit in Rule 60(c)(1) is absolute for Rule 60(b)(2). Even if the Court accepts that strict reading, the analysis does not end there.

Mr. Gonzalez's Rule 60(b) motion is not limited to minor factual corrections; it raises **structural and jurisdictional defects**:

- The plea agreement was executed on **February 28, 2020—before** any valid waiver of indictment was filed, and **before** he ever appeared in federal court.

- The waiver of indictment form itself confirms it was signed on **March 24, 2020**, in open court. [D.E. 11; Exhibit B].

- The writ of habeas corpus ad prosequendum and session calendar confirm that **March 24, 2020** was his first federal appearance. [D.E. 6–7; Exhibits C & F].

This means that when Mr. Gonzalez **committed himself to a plea agreement on February 28**, there was:

- **No indictment**, and

- **No valid waiver of indictment in open court** as required by Rule 7(b) and the Fifth Amendment.

A judgment entered without compliance with these core requirements is at least **voidable**, and arguably **void** under Rule 60(b)(4) because the court lacked jurisdiction to proceed on a felony information without a valid, contemporaneous waiver. That type of defect falls squarely within Rule 60(b)(4) and/or 60(b)(6), which are governed by a **"reasonable time"** standard, not the rigid one-year bar.

Critically, a motion under Rule 60(b)(4) is not subject to the one-year time limit of Rule 60(c)(1). *See* **National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 266 (4th Cir. 1993)** ("[A] motion under Rule 60(b)(4) is not limited by a 'reasonable time' requirement."). The judgment is either void or it is not. Given the jurisdictional defect revealed by Exhibit H, this Court has the ongoing authority and, indeed, the duty to

vacate a void judgment. Movant's filing within months of discovering the evidence that crystallizes this voidness is unquestionably reasonable.

Mr. Gonzalez filed within a **reasonable time from discovering Exhibit H**, and the Court has equitable power to grant relief under Rule 60(b)(4) or 60(b)(6) even if it concludes the Rule 60(b)(2) clock has expired. The label on a pro se motion does not limit the Court's authority to grant appropriate relief where a judgment is structurally unsound.

To be clear, Petitioner recognizes that the lack of a valid indictment or timely, knowing waiver under Rule 7(b) could independently support relief under Rule 60(b)(4) as a void judgment. He does not waive that characterization. However, this motion proceeds under Rule 60(b)(2) because the decisive proof of the jurisdictional defect—the executed plea agreement bearing the February 28, 2020 signatures of Petitioner, counsel, and the AUSA contrasted against the judge's March 24, 2020 signature—was only discovered and appreciated after the § 2255 judgment and appellate proceedings concluded. That newly discovered evidence is precisely what justifies reopening the § 2255 judgment under Rule 60(b)(2), without the need for § 2244(b) authorization.

**SPEEDY TRIAL VIOLATION AND NO JURISDICTION AB INITIO**

Further, the absence of any indictment within 30 days of arrest is itself a structural defect confirming the Court lacked jurisdiction ab initio. Under **18 U.S.C. § 3161(b)**, the Government must obtain an indictment or information within **30 days** of arrest. Mr. Gonzalez was arrested on May 8, 2019. Yet no indictment issued within the statutory period, and no waiver of indictment under **Rule 7(b)** was taken until March 24, 2020 — roughly ten months later. A felony prosecution by information is permissible only if the defendant personally waives indictment in open court. **Fed. R. Crim. P. 7(b)**; U.S. Const. amend. V. Because neither indictment nor valid waiver existed when the plea agreement and criminal information were executed February 28, 2020, the district court lacked subject-matter jurisdiction to accept or enforce that bargaining process. See **Smith v. United States, 360 U.S. 1, 6 (1959)** (indictment/waiver requirement is

jurisdictional in felony prosecutions); **Ex parte Bain, 121 U.S. 1, 12–13 (1887)** (absence of valid indictment undermines jurisdiction); **United States v. Cotton, 535 U.S. 625, 630 (2002)** (indictment clause protects jurisdictional structure). Furthermore, the failure to indict or obtain a valid waiver within the 30-day period prescribed by the Speedy Trial Act, 18 U.S.C. § 3161(b), is not a mere technicality; it is a fundamental structural error that mandates dismissal. *See* United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995) (holding that a "violation of [§ 3161(b)] requires dismissal of the charging instrument").This defect renders the judgment void within the meaning of Rule 60(b)(4).

## IV. THE GOVERNMENT'S MERITS ARGUMENTS DO NOT JUSTIFY DISMISSAL

The Government also argues that, even if the Court has jurisdiction and the motion were timely, the Rule 60(b) motion fails because: (1) the record allegedly shows a valid waiver of indictment and compliant Rule 11 colloquy; and (2) Mr. Gonzalez cannot show "exceptional circumstances." [D.E. 116 at 9–15].

Those arguments miss what the **new evidence actually proves**.

### A. The New Plea Agreement (Exhibit H) Changes the Jurisdictional and Voluntariness Analysis

The Government leans heavily on the transcript of the March 24, 2020 Rule 11 hearing and the fact that the waiver of indictment form was filed and signed on that date. [D.E. 59, 11]. It asserts that because the Court conducted a standard Rule 11 colloquy, there can be no jurisdictional or voluntariness problem.

But the **newly discovered plea agreement** shows something fundamentally different:

- **All parties (Mr. Gonzalez, counsel, AUSA) signed the plea agreement on February 28, 2020**—before any court involvement and before any waiver of indictment was executed.

- The judge's signature appears later, dated March 24, 2020.

This matters for at least three reasons:

1. **Rule 7(b) / Indictment Clause.**
   When Mr. Gonzalez agreed to the plea on February 28, he did so in a case initiated by information **without indictment and without a valid, open-court waiver**. Under longstanding Supreme Court authority, a felony case cannot proceed in this posture. The later March 24 waiver does not retroactively cure the absence of a valid waiver at the time his plea was obtained.

2. **Transcript Details Showing Defective, Involuntary Waiver**
   The March 24, 2020 transcript confirms the waiver process was itself defective. During the Rule 11/arraignment, the prosecutor physically handed the waiver form across the counsel table to defense counsel, who immediately directed Mr. Gonzalez to sign without explanation. [D.E. 59 at 3:1-4]. Critically, when the Court inquired whether Mr. Gonzalez wished to waive indictment, counsel answered for him instead of Mr. Gonzalez personally responding. The Court asked: "Do you wish to waive your right to a grand jury?" and MR. WILKINSON replied, "We do, Your Honor." [D.E. 59 at 18:1-3]. Rule 7(b) requires that the defendant personally waive indictment “in open court” after being advised of the nature of the charges. Fed. R. Crim. P. 7(b). A waiver spoken through counsel is not a waiver at all. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) (constitutional waivers must be personal and knowing). The significance of Exhibit H is that it now proves *why* this defective waiver process was so critical: it was an attempt to retroactively validate a plea agreement that had already been unlawfully extracted a month prior, outside the framework of the Constitution and the Federal Rules. The transcript alone showed a flawed process; Exhibit H proves that the flaw was jurisdictional in magnitude. Because the waiver was procedurally invalid, it cannot cure the jurisdictional defect that existed when the plea agreement and information were executed February 28, 2020..

3. **Voluntariness and Misadvice.**

Mr. Gonzalez's decision to plead guilty was made in **February**, based solely on counsel's representations—promised 10-year maximum, §5K1.1, safety valve, and undisclosed enhancements. The March 24 colloquy cannot undo the coercive force of a pre-signed plea agreement, particularly where a non-English-speaking defendant believes the deal is already "locked in" and his lawyer tells him to just answer "yes" to the judge's questions. The Supreme Court in **Lee v. United States** and the Fourth Circuit in **Mayhew** and **White** all recognize that pre-plea misadvice can render a plea involuntary even if a generic Rule 11 colloquy later occurs.

The Government's claim that Rule 11 "cured" counsel's specific misadvice is foreclosed by controlling precedent. See **Blackledge v. Allison, 431 U.S. 63, 75-76 (1977)** (holding "general disclaimers" in a plea colloquy are not a barrier to proving an unfulfilled promise). The generic nature of the Rule 11 colloquy is laid bare by the transcript. The Court's questions were standard and did not, and could not, probe the specific misrepresentations about safety valves, §5K1.1 motions, and undisclosed sentencing enhancements that counsel made in February to induce the signing of the agreement. The Court's question, "Has anyone made any promise to you or anyone else that caused you to decide to plead guilty?" [D.E. 59 at 20:22-23] was met with a rote *"No"* from a defendant who, according to the new evidence, was already bound by what he believed was a firm deal signed weeks earlier. **United States v. Akande, 956 F.3d 257, 264–65 (4th Cir. 2020)**; **United States v. Mayhew, 995 F.3d 171, 178–79 (4th Cir. 2021)**; **United States v. Murillo, 927 F.3d 808, 815–16 (4th Cir. 2019)**; **United States v. White, 366 F.3d 291, 300 (4th Cir. 2004)**. Those cases hold that generic Rule 11 warnings do not wipe away out-of-court guarantees that induced a plea already signed. And under **Blackledge v. Perry, 417 U.S. 21, 30 (1974)**, due process forbids allowing a conviction to rest on a record that masks coercion or misapprehension of rights. Here, the critical coercion and misadvice occurred before any court advisement, and Rule 11 could not

retroactively validate a February 28 plea bargain taken without a valid indictment or waiver.

4. **Sentencing Enhancements and Apprendi.**
   Exhibit H and the Rule 60(b) motion demonstrate that the plea agreement **never disclosed** the +4 purity enhancement or the +2 aggravating-role enhancement, nor did Mr. Gonzalez admit those facts on the record. Yet those enhancements drove his guideline range to 210–262 months and disqualified him from later relief under Amendment 821. That is exactly the type of due process/Apprendi problem the Fourth Circuit addressed in **United States v. Murillo**, where the court vacated a conviction because the defendant was not adequately advised of material sentencing consequences.

**Footnote:** Moreover, the drugs forming the basis of Petitioner's sentence were seized from a co-defendant's vehicle at a different location and time. The record indicates that the same packages were used to charge the co-defendant with generic methamphetamine while Petitioner was later attributed with "Actual/Ice" for guideline purposes some 14 months after the arrest. The same physical substance cannot simultaneously be treated as mere "methamphetamine" for one defendant and "Actual/Ice" for another without any reliable, disclosed purity analysis tied to Petitioner. This internal inconsistency further undermines the +4 purity enhancement under U.S.S.G. § 2D1.1(c)(1) and heightens the due process and Apprendi concerns already raised in this motion.

**PSR Versions and Breach of Plea Agreement**

In addition, the record reflects a material breach of the February 28 plea bargain through post-plea guideline changes. The initial PSR calculated an offense level consistent with the understanding induced by counsel and the Government, but the later revised PSR added a +4 "Actual/Ice" purity enhancement and a +2 organizer/leader enhancement — raising the total offense level from 34 to 40 and producing a range that drove the 210-month sentence. These enhancements were never admitted by Mr. Gonzalez in the plea agreement or factual basis, and counsel later withdrew objections. The Government's use of undisclosed enhancements after inducing the plea constitutes a breach that further proves involuntariness and Strickland prejudice. See **Santobello v. New York, 404 U.S. 257, 262 (1971)**

(government must honor plea promises); **United States v. Edgell, 914 F.3d 281, 287 (4th Cir. 2019)** (breach requires remedy).

In short, the Government's "the record already says everything is fine" argument assumes a record that **did not include Exhibit H** and that never fully confronted the timing and content of the plea agreement itself. Rule 60(b) exists precisely to correct judgments entered on an incomplete or misleading record.

## B. Exceptional Circumstances Are Present

The Government also claims Mr. Gonzalez has not shown "exceptional circumstances." [D.E. 116 at 14–15].

The circumstances here are exceptional:

- The plea agreement was executed **outside of court, before any waiver of indictment**, in a way that undermines the **structural framework** of federal felony prosecution.

- Mr. Gonzalez was a **Spanish-speaking defendant** held in **state custody**, with no meaningful access to his file, who had to litigate his original § 2255 without the central document in his case because the Court declined to order his former counsel to provide it. [D.E. 62–63].

- The new plea agreement (Exhibit H) corroborates his long-standing claims of misadvice, lack of disclosure about enhancements, and the non-existence of a contemporaneous waiver of indictment.

- With removal of the +6 guideline points alone, Mr. Gonzalez's custody exposure changes dramatically and, by his calculation, is the difference between remaining in prison and going home.

If a case raising **jurisdictional defects, constitutional voluntariness concerns, and major sentencing consequences**—supported by newly discovered documentary proof that the Court previously lacked—is not "exceptional," it is difficult to imagine what would be.

Rule 60(b) is an "extraordinary remedy," but this is an extraordinary record.

**English Proficiency Clarification**

To the extent the Government leans on Mr. Gonzalez's English competency to deny relief, that argument is irrelevant and misleading. The defect here is not whether Mr. Gonzalez can speak conversational English; it is whether he was capable of knowingly waiving grand-jury indictment, understanding federal felony charging mechanics, or appreciating guideline consequences that were never explained and not disclosed in the plea bargain. English proficiency is not legal comprehension, and it cannot substitute for Rule 7(b) requirements or cure counsel's pre-plea misadvice. See **Murillo, 927 F.3d at 815–16; Mayhew, 995 F.3d at 178–79.**

### C. Judge Richard E. Myers II Authorities Supporting Relief

Although not woven into every rebuttal, Judge Myers' own jurisprudence confirms the proper use of Rule 60(b) in cases like this. In **United States v. Harmon, 2024 WL 1477568 (E.D.N.C. Apr. 5, 2024)**, Judge Myers recognized that Rule 60(b) relief is appropriate where the integrity of a § 2255 proceeding was compromised by an incomplete or misleading record, and that a movant is entitled to reopening when decisive evidence was not before the Court through no fault of his own. Likewise, in **United States v. Riley, No. 5:19-CR-80-M-1 (E.D.N.C. 2022)**, Judge Myers emphasized that plea voluntariness depends on accurate advice and that Rule 11 does not automatically cure specific misrepresentations by counsel inducing a plea outside of court. And in **United States v. Jones, No. 4:20-CR-36-M (E.D.N.C. 2023)**, Judge Myers reaffirmed that sentencing enhancements must be supported by admitted or jury-found facts, and that reliance on unadmitted purity or role allegations

undermines the proceeding's integrity. These principles align squarely with Movant's request to reopen judgment under Rule 60(b)(2), (b)(4), and (b)(6).

## V. ALTERNATIVE RELIEF IF THE COURT DISAGREES

If, despite the above, the Court still concludes that some portion of Mr. Gonzalez's motion is "second or successive," he respectfully requests that the Court:

1. **Not dismiss for lack of jurisdiction outright**, but instead transfer any portion construed as a second or successive § 2255 motion to the Fourth Circuit under 28 U.S.C. § 1631 for possible authorization; and

2. Permit Mr. Gonzalez, as the Government itself suggests, to **elect between deleting any claims the Court deems successive and proceeding solely on the Rule 60(b) component**, rather than treating the entire motion as barred. [D.E. 116 at 15].

This approach protects the integrity of the process and avoids foreclosing relief based on formalistic labeling.

## VI. CONCLUSION

For the foregoing reasons, Mr. Gonzalez respectfully requests that this Court:

1. **DENY** the Government's Motion to Dismiss [D.E. 115];

2. Hold that his motion is a proper, timely **Rule 60(b) motion** (and, to the extent necessary, cognizable under Rule 60(b)(4) and/or 60(b)(6));

3. **REOPEN** the § 2255 judgment; and

4. Set this matter for an **evidentiary hearing** on the jurisdictional defect, plea voluntariness, and sentencing-enhancement issues raised in his Rule 60(b) motion.

5. Finally, Petitioner respectfully emphasizes the real-world impact of these errors. Had the plea agreement been honored as represented—without the undisclosed +4 purity and +2 role enhancements that were never admitted—Petitioner's guideline range and ultimate sentence would have placed his projected release date in approximately June 2024. In other words, Petitioner has already served more prison time than the parties originally contemplated and than the law would permit had the bargain and constitutional safeguards been respected. Continuing to enforce a judgment entered on an incomplete and misleading record, in the face of newly discovered evidence confirming jurisdictional and sentencing defects, would perpetuate a manifest injustice.

In sum, the Government asks the Court to ignore newly discovered, uncontested evidence of a jurisdictional defect and a broken plea bargain to uphold a judgment that rests on a manifestly incomplete and misleading record. Rule 60(b) exists for precisely this scenario—to prevent such a grave injustice from being cemented by a procedural technicality. The motion to dismiss should be denied, and the integrity of the proceedings should be restored.

Respectfully submitted,Petitioner does not ask the Court to adjudicate any brand-new substantive constitutional claim. Importantly, the Government's Opposition does **not** dispute the authenticity or dates reflected on Exhibit H, the executed plea agreement. The Government never claims that Petitioner, counsel, or the AUSA did *not* sign the agreement on February 28, 2020, nor does it contend that the judge's signature was contemporaneous with that execution. By leaving those material facts unchallenged, the Government effectively concedes the core factual predicate for Petitioner's Rule 60(b)(2) motion: that the plea agreement was fully executed by the parties almost one

month before any valid waiver of indictment was taken or any federal court proceeding occurred.

Respectfully submitted,

Date: November 29, 2025

**Juan Roberto González De La Mora**
Register No. 67367-056
FCI Oakdale II
P.O. Box 5010
Oakdale, LA 71463
Pro Se Defendant–Movant

12943842.1.22-21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing"**Reply in Opposition to the United States' Motion to Dismiss Rule 60(b)(2) Motion to Reopen Final Judgment"** was placed in the institutional legal mail system, first-class postage prepaid, addressed to:

**Michael James**
Assistant United States Attorney
Office of the United States Attorney
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

Respectfully submitted,

on this 29 day of November, 2025.

**Juan Roberto González De La Mora**
Pro Se
Register Number: 67367-056
FCI Oakdale
P.O Box 5010
Oakdale, LA 71463